800 So.2d 790 (2001)
STATE of Louisiana
v.
Sidney WILLIAMS.
No. 2000-K-1725.
Supreme Court of Louisiana.
November 28, 2001.
*792 Jarvis M. Antwine, Baton Rouge, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Douglas P. Moreau, District Attorney, Creighton B. Abadie, Baton Rouge, Counsel for Respondent.
*793 KNOLL, Justice.[*]
We granted this writ application to consider the retroactivity and scope of LA.REV. STAT. ANN. § 15:301.1, including the limits it purports to make on State v. Jackson, 452 So.2d 682 (La.1984). For the following reasons, we find LA.REV.STAT. ANN. § 15:301.1 may be applied retroactively, that the Legislature's specific limitation on State v. Jackson and its progeny does not violate the defendant's constitutional right to appeal his conviction, and that the time limitations recognized in LA.REV.STAT. ANN. § 15:301.1(D) were inapplicable under the procedural posture of this case.

FACTS
On October 24, 1997, an off-duty East Feliciana Parish deputy pulled the defendant, Sidney Williams, over after he observed the defendant's car cross the center and fog lines several times. When the East Feliciana Parish deputy effected the stop in East Baton Rouge Parish, a state trooper was called to the scene. The trooper immediately detected an odor of alcohol on defendant. After the defendant performed poorly on a field sobriety test, the trooper transported the defendant to the East Baton Rouge Parish prison where he was given his rights pertaining to submission to a chemical test for intoxication. After submitting a breath sample, the intoxilyzer test revealed that defendant had a blood alcohol concentration of 0.144 percent. The trooper then arrested defendant.
The State charged defendant with driving while intoxicated, third offense; earlier, defendant had entered two guilty pleas on October 3, 1995, for driving while intoxicated in December of 1994 and October of 1995. After the trial court denied defendant's motions to quash, challenging the court's jurisdiction and the prior pleas as involuntary and Boykin-defective, the defendant entered a guilty plea, reserving the right to review the trial court's rulings under State v. Crosby, 338 So.2d 584 (La. 1976). The trial court sentenced defendant to three years at hard labor, suspended, and placed him on three years active probation specially conditioned on three years home incarceration under LA.CODE CRIM. PROC. ANN. art. 894.2 "through the Criminal Justice Services."
On appeal, the First Circuit unanimously affirmed defendant's conviction, but a majority of the appellate court found patent sentencing errors because the trial court ignored penalties mandated by LA. REV.STAT. ANN. § 14:98(D),[1] and had selected punishment not authorized by the home incarceration article.[2] Accordingly, it vacated *794 the defendant's sentence and remanded the matter to the trial court for re-sentencing. State v. Williams, 99-1840, slip op. at 6-7 (La.App. 1 Cir. 5/12/00). The dissenting judge believed that LA. REV.STAT. ANN. § 15:301.1 was inapplicable to a sentence imposed before the statute's effective date or after its 180-day amendment period had run. Id. at 1 (Pettigrew, J. dissenting). This Court issued a limited grant of defendant's writ application to address LA.REV.STAT. ANN. § 15:301.1 and to resolve a split among the circuits as to its retroactivity and the impact of the 180-day amendment period applied to the provisions specified in the statute. State v. Williams, 00-K-1725 (La.5/25/01), 792 So.2d 743.

DISCUSSION
The court of appeal's interpretation of LA.REV.STAT. ANN. § 15:301.1 places at issue the question of whether the statute could be applied retroactively and questions the authority of a reviewing court to amend or order amended an "illegally lenient" sentence when the State did not object below or complain on appeal of the leniency.
1999 LA. ACTS 94, effective August 15, 1999, embodied LA.REV.STAT. ANN. § 15:301.1 which provides:
A. When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.
B. If a sentence is inconsistent with statutory provisions, upon the court's own motion or motion of the district attorney, the sentencing court shall amend the sentence to conform to the applicable statutory provisions. The district attorney shall have standing to seek appellate or supervisory relief for the purpose of amending the sentence as provided in this Section.
C. The provisions of this Section shall apply to each provision of law which requires all or a portion of a criminal sentence to be served without benefit of probation, parole, or suspension of sentence, or of any one of them, any combination thereof, or any substantially similar provision or combination of substantially similar provisions.
D. Any amendment to any criminal sentence as authorized by the provisions of this Section shall be completed within one hundred eighty days of the initial sentencing.
The appellate courts of this state are split on the retroactive application of LA.REV.STAT. ANN. § 15:301.1 and the implications of the 180-day time period referenced in Paragraph (D). The First Circuit has simply cited LA.REV.STAT. ANN. § 15:301.1 without elaboration, and has applied it retroactively to crimes and sentences which occurred prior to the effective date of LA.REV.STAT. ANN. § 15:301.1, long after the 180-day amendment period ran. Williams, 99-1840 at 6; State v. Houston, 98-2658 (La.App. 1 Cir. 9/24/99), 754 So.2d 256; State v. Cadiere, 99-0970 (La.App. 1 Cir. 2/18/00), 754 So.2d 294, writ denied, 00-0815 (La.11/13/00), 774 *795 So.2d 971.[3] The same panel of judges decided these First Circuit cases; Judge Pettigrew dissented in each case. In stark contrast, the Third and Fifth Circuit Courts of Appeal have declined to apply LA.REV.STAT. ANN. § 15:301.1 to sentences imposed prior to August 15, 1999, apply the prior case law, and in general strictly apply the 180-day time period announced in paragraph (D).[4]

Retroactive Application of LA.REV.STAT. ANN. § 15:301.1
From the outset, we do not find that application of LA.REV.STAT. ANN. § 15:301.1 to sentences imposed prior to the statute's effective date violates the prohibition against ex post facto laws. In State ex rel. Olivieri v. State, 00-0172 c/w 00-1767 (La.2/21/01), 779 So.2d 735, cert. denied, ___ U.S. ___, 121 S.Ct. 2566, 150 L.Ed.2d 730 (2001), this Court, citing California Dept. of Corrections v. Morales, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) and Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), adopted the narrower federal ex post facto jurisprudence which focuses on whether a new law redefines criminal conduct or increases the penalty by which it is punished, not whether the defendant has simply been disadvantaged.
A careful reading of LA.REV.STAT. ANN. § 15:301.1 shows that the statute neither increases punishment for a criminal offense nor alters the terms and conditions of punishment previously established by the Legislature for the commission of a crime. Rather, the thrust of LA.REV.STAT. ANN. § 15:301.1 is procedural, i.e., it assures that legislatively recognized criminal penalties are imposed and that amendments to sentences are timely completed. Accordingly, the retroactive application of LA.REV.STAT. ANN. § 15:301.1 to sentences imposed prior to August 15, 1999, does not constitute a violation of the prohibition against ex post facto laws.

*796 Effect of LA.REV.STAT. ANN. § 15:301.1 on Jackson Fraser line of jurisprudence

Prior to August 15, 1999, the effective date of LA.REV.STAT. ANN. § 15:301.1, amendments to sentences of this kind were barred. In State v. Jackson, 452 So.2d 682 (La.1984), this Court made clear that this sort of "unsought modification ... either is or appears to be retaliatory in nature," and "may have a `chilling effect' on the exercise of the [defendant's] right to appeal." Id. at 683. See also State v. Delcambre, 480 So.2d 294, 297 (La.1985) (holding that an appellate court may not correct an illegally lenient sentence by imposing a two-year firearm enhancement penalty when the defendant was not charged with its violation, even if the law is stated in mandatory terms); State v. Williams, 439 So.2d 387 (La.1983) (per curiam) (stating that "[i]ncreasing a lawful sentence chills the right to appeal."); State v. Goodley, 423 So.2d 648, 651-652 (La. 1982) (holding that due process forbids a harsher punishment for the sole applicant resulting from an unsought correction of a patent error by a reviewing court). See also State v. Payn, 95-2166 (La.1/26/96), 666 So.2d 661 (per curiam) (stating that "[a]n appellate court may not correct a patent error which is favorable to the sole appellant in a criminal appeal."); State v. Napoli, 437 So.2d 868 (La.1983) (per curiam) (holding that when a defendant alone appeals, a court "should review only those issues raised by [him] and any patent errors favorable to [him].").
Furthermore, in State v. Fraser, 484 So.2d 122 (La.1986), we were called upon to consider the legislative amendment to LA.CODE CRIM. PROC. ANN. art. 882. That article, which had provided that "[a]n illegal sentence may be corrected at any time by the court that imposed the sentence," was legislatively amended to provide further "[a]n illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review." (emphasis added). After several appellate courts interpreted that amendment as an effort by the Legislature to change the law in Jackson, we considered that issue and determined otherwise. Although we recognized that a defendant does not have a constitutional right to an illegally lenient sentence, we nonetheless determined that the reviewing court need not correct a sentencing error when the State had not complained. Id. at 124. Moreover, we observed:
[T]he appearance of an impartial judiciary is not served when an appellate court supplies an objection [for] the prosecutor who has not complained that the defendant did not receive the harshest minimum sentence under the penalty statute. It is the prosecutor's duty to protect the state's interest in obtaining adequate sentences, and the criminal justice system suffers no detriment from the application of time-honored procedural rules which require the parties, and not the appellate court, to complain of some dissatisfaction with the judgment of the lower court in order to obtain any favorable change in the judgment or appeal.
Id. at 125. Therefore, Fraser built upon Jackson and the rule developed in this State that when a defendant alone appealed and the record contained a patent error favorable to him, an appellate court should ignore it unless "the prosecution, having properly raised the issue in the trial court, has [also] sought appellate review." Jackson, 452 So.2d at 684.
In Section 2 of 1999 LA. ACTS 94, the genesis of LA.REV.STAT. ANN. § 15:301.1, the Legislature stated:
The provisions of Section 1 of this Act *797 shall legislatively overrule[5] the cases of State v. Jackson, 83-2360 (La. S.Ct.6/25/84), 452 So.2d 682, [State ex rel.] Pierre v. Maggio, 83-0806 (La. S.Ct.1/27/84), 445 So.2d 425, and any other case which is contrary to the provisions of this Act.[6]
Neither State v. Jackson, 452 So.2d 682 (La.1984) nor State v. Fraser, 484 So.2d 122 (La.1986), specifically addressed the constitutional issue of whether a correction of sentence on appellate review (which imposes a more onerous sentence on the defendant/sole appellant) violates the due process rights of a defendant by its chilling effect on the exercise of the right of appeal. See Fraser, 484 So.2d n. 6 at 124.
LA. CONST. ANN. ART. I, § 2 provides that "no person shall be deprived of life, liberty, or property, except by due process of law." As recognized in State ex rel. Glover v. State, 93-2330, 94-2101, 94-2197 (La.9/5/95), 660 So.2d 1189, "One of the goals of Louisiana's system of justice is to provide both the accused and the state fair and prompt trials, appeals, and further proceedings to correct error." Glover, 660 So.2d at 1196. Moreover, as provided in LA. CONST. ANN. art. I, § 19, "No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based." In light of these constitutional provisions and jurisprudential pronouncements, it is clear that due process of law requires that avenues of appellate review, once established, must be kept free of obstacles that can only impede open and equal access to the courts. State v. Goodley, 423 So.2d 648, 651-652 (La.1982).
Implicit in the due process clause is the protection of an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. In re: Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, an accused has a constitutional right to appellate review of the evidence which determines whether the record could reasonably support a finding of guilty beyond a reasonable doubt. Jackson; State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Although a criminal defendant has the constitutional right to have his conviction reviewed to insure that the State proved his guilt beyond a reasonable doubt, it is nonetheless well established that a defendant in a criminal case does not have a constitutional or statutory right to an illegal sentence. Fraser, 484 So.2d at 125; Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947). In Bozza, a Federal judge sentenced the defendant under a federal statute *798 which carried a minimum mandatory penalty of imprisonment and fine. Although the sentencing judge initially only imposed imprisonment, he subsequently summoned the defendant back into court and imposed the mandatory fine. Commenting on this scenario, the United States Supreme Court stated:
Petitioner contends, however, that ... correction of this sentence so as to make it lawful increases his punishment. If this inadvertent error cannot be corrected in the manner used here by the trial court, no valid and enforceable sentence can be imposed at all. This Court has rejected the "doctrine that a prisoner, whose guilt is established by a regular verdict, is to escape punishment altogether because the court committed an error in passing the sentence." The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. In this case the court "only set aside what it had no authority to do, and substitute[d] directions required by the law to be done upon the conviction of the offender." It did not twice put petitioner in jeopardy for the same offense. The sentence as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense.
Bozza, 330 U.S. at 166-67, 67 S.Ct. 645. (citations and footnote omitted).
It is well settled that "the chilling [effect on] appeals does not in and of itself offend due process." United States v. Henry, 709 F.2d 298, 316 n. 26 (5th Cir.1983). More specifically, due process is not offended by all possibilities of increased punishment after appeal, only by those which involve "actual retaliatory motivation" or "pose a realistic likelihood of `vindictiveness'." Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); Henry, 709 F.2d at 315-16. It is readily apparent that a significant distinction may be drawn between vindictiveness which, after appeal, increases a defendant's sentencing exposure or increases a legal sentence, and the pro forma correction of an illegal sentence. When an illegal sentence is corrected, even though the corrected sentence is more onerous, there is no violation of the defendant's constitutional rights. Llerena v. United States, 508 F.2d 78 (5th Cir.1975); Reyes v. United States, 262 F.2d 801, 802 (5th Cir.1959). Simply stated, when a court complies with a nondiscretionary sentencing requirement, i.e., a mandatory minimum term or special parole provision(s), no due process violation is implicated because neither actual retaliation nor vindictiveness exists. Against this backdrop, we now turn to Paragraphs (A), (B), and (C) of LA.REV.STAT. ANN. § 15:301.1, those remedial sentencing provisions designated as statutorily amended and those which are amendable.
Paragraph A of LA.REV.STAT. ANN. § 15:301.1 addresses those instances where sentences contain statutory restrictions on parole, probation or suspension of sentence. See e.g.: LA.REV.STAT. ANN. § 14:64 (armed robbery); LA.REV.STAT. ANN. § 15:529.1(A)(2)(b)(ii) (third felony offenders convicted of a crime of violence); LA.REV.STAT. ANN. § 14:44 (aggravated kidnapping); or those with specified, but limited, restrictions on the eligibility for parole, probation and suspension of sentence (LA.REV.STAT. ANN. § 14:51 (aggravated arson, "[t]wo years of such imprisonment at hard labor shall be without benefit of parole, probation, or suspension of sentence."); LA.REV.STAT. ANN. § 14:98(D)(1)(operating a vehicle while intoxicated, third offense, "[a]t least six months of the sentence of imprisonment imposed shall be without benefit of probation, *799 parole, or suspension of sentence.")). In instances where these restrictions are not recited at sentencing, LA.REV.STAT. ANN. § 15:301.1(A) deems that those required statutory restrictions are contained in the sentence, whether or not imposed by the sentencing court. Additionally, this paragraph self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute.
Paragraph B of LA.REV.STAT. ANN. § 15:301.1, though not self-activating as Paragraph A of LA.REV.STAT. ANN. § 15:301.1,[7] provides the court or the district attorney with authority to have a sentence which is inconsistent with the statutory provisions to be amended by the sentencing court. It appears that this paragraph is addressed to sentencing restrictions other than parole, probation, or suspension of sentence. By way of example, in the present case LA.REV.STAT. ANN. § 14:98(D) provides for the mandatory imposition of a $2,000 fine, and, subject to certain exceptions enumerated in LA.REV. STAT. ANN. § 14:98(D)(2)(b) and (c), LA.REV. STAT. ANN. § 14:98(D)(2)(a) requires the mandatory sale of the vehicle being driven at the time of the offense.[8] Should the sentencing court not make the amendment(s), this paragraph grants standing to the district attorney "to seek appellate or supervisory relief for the purpose of amending the sentence" to impose the statutorily provided penalty. LA.REV.STAT. ANN. § 15:301.1(B).
Paragraph C of LA.REV.STAT. ANN. § 15:301.1 seems to track Paragraph A. Nonetheless, it further adds that the provisions of LA.REV.STAT. ANN. § 15:301.1 will apply to every law which requires "all or a portion of a criminal sentence to be served without benefit of probation, parole, or suspension of sentence ... or any one of th[ose conditions or] any combination thereof...." In this regard, it appears that this paragraph attempts to cover those instances which may not specifically be covered under paragraph A, such as LA.REV.STAT. ANN. § 15:529.1(G) which only restricts probation or suspension of sentence, and does not include a restriction on parole.
Viewing these statutory provisions in light of the defendant's due process rights and his recognized right in Louisiana to seek appellate review of his conviction, we find no impediment to the Legislature's statement that LA.REV.STAT. ANN. *800 § 15:301.1 was enacted to change the law in State v. Jackson and its progeny. No portion of LA.REV.STAT. ANN. § 15:301.1 conflicts with a constitutional principle to which the legislative enactment must yield. Paragraphs A, B, and C of LA.REV.STAT. ANN. § 15:301.1 simply provide for the correction of illegally lenient sentences and neither increase a defendant's sentencing exposure nor increase a legal sentence. Accordingly, we find that the provisions of this legislative enactment do not impede the defendant's constitutional right to appeal.

The 180-day amendatory time limit
LA.REV.STAT. ANN. § 15:301.1(D) incorporates an amendatory time limit. It specifically provides that sentence amendments authorized under LA.REV.STAT. ANN. § 15:301.1 "shall be completed within one hundred eighty days of the initial sentencing." Although the statutory language is straightforward and mandatory, a cursory reading of the proviso seems to unwittingly limit LA.REV.STAT. ANN. § 15:301.1(A) and conflicts with the provision of LA.CODE CRIM. PROC. ANN. art. 882 which allows an illegal sentence to be corrected at "any time."
It is well accepted that criminal statutes are strictly and narrowly construed, with any ambiguity resolved in favor of the accused. State v. Carr, 99-2209 (La.5/26/00), 761 So.2d 1271. Criminal statutes are presumed valid, and are given a genuine construction according to the fair import of their words, taken in their usual sense, in context, and with reference to the purpose of the provision. LA.REV. STAT. ANN. § 14:3; State v. Muschkat, 96-2922 (La.3/4/98), 706 So.2d 429. What "a legislature says in the text of a statute is considered the best evidence of the legislative intent or will." NORMAN J. SINGER, STATUTORY CONSTRUCTION § 46:03, p. 135 (6th ed.2000). Furthermore, because the Legislature is presumed to intend to achieve a consistent body of law, there is a presumption against an implied repeal of pre-existing statutes on the same subject based on the theory that legislators envision the whole body of law when new legislation is enacted. State v. Piazza, 596 So.2d 817, 819 (La.1992).
Our review of the legislative history of LA.REV.STAT. ANN. § 15:301.1 shows that Paragraph (D), the 180-day amendatory time limit, was not in the original house bill and was added as a result of discussions during the meeting of the House Committee on Administration of Criminal Justice. Representative Jenkins opined at the hearing that there was a need for a "time frame for amending a sentence and reasonable notice to the defendant should he opt to appeal." Hearings on House Bill No. 109 Before the House Committee on Administration of Criminal Justice, March 31, 1999, at page 5. In addition, Richard Stalder, Secretary, Louisiana Department of Public Safety and Corrections, appeared before the committee for informational purposes and stated that when a person is sentenced, the department must compute a parole date. For a conviction of a crime where there is no eligibility for probation, parole, or suspension of sentence, a computation of a parole date is unnecessary. He concluded by stating that there should be no confusion at the time of sentencing. Hearings, at page 5. Subsequently, the bill was amended on the floor of House of Representatives to add the 180 day amendatory time limit. As amended, the bill unanimously passed the House of Representatives and the Senate.
After reviewing the committee minutes, it is apparent from the few comments that the concern for a time limit was directed to the district rather than the appellate courts. That being said, we *801 must now attempt to discern whether the appellate court in the case sub judice, acting 16 months after the defendant's initial sentencing, was authorized to vacate the defendant's sentence and remand for resentencing.[9]
Initially, we find that the time limitation recognized in Paragraph D of LA.REV.STAT. ANN. § 15:301.1 is inapplicable to Paragraph A; to rule otherwise would eviscerate the intent of this element of the legislative enactment. To the extent that Paragraph C of LA.REV.STAT. ANN. § 15:301.1 may be applicable to restricted criminal sentences to be served without benefit of probation, parole, or suspension of sentence, the thrust of Paragraph A of LA.REV.STAT. ANN. § 15:301.1, or any one or a combination of those restrictions, we likewise find Paragraph D of LA.REV.STAT. ANN. § 15:301.1 inapplicable. As noted earlier, we recognized that this provision directs that sentences that require statutory restrictions on parole, probation, or suspension of sentence are "deemed to contain [those] provisions,"[10] (emphasis added) whether or not the sentencing court pronounces those restrictions at the time of initial sentencing. It is clear from the statutory language that this proviso is self-activated, eliminates the remand for ministerial correction of sentence, and requires no notice to the defendant.[11] Simply stated, the provisions of Paragraphs A and C do not call for amendment as no correction is required. Rather, that which was legislatively mandated at the time of sentencing is recognized as having existed statutorily without pronouncement being necessary. Accordingly, we find it was appropriate for the appellate court in the present case to so note that "[a]t least six months of the [defendant's] sentence of imprisonment imposed shall be without benefit of probation, parole, or suspension of sentence." LA.REV.STAT. ANN. § 14:98(D)(1). However, because of the complete failure of the sentencing court to abide by any of the sentencing requirements of LA.REV.STAT. ANN. § 14:98(D)(1) and because an element of sentencing discretion existed as regards the length of sentence served without benefit of parole, probation, or suspension of sentence, it was necessary for the appellate court to remand the matter to the trial court for re-sentencing.
In the present case, the appellate decision further recognized that the sentencing court's choice of sentence was inconsistent with the statutory provisions which called for a mandatory fine of $2,000, LA.REV. STAT. ANN. § 14:98(D)(1), required the sale of the vehicle, LA.REV.STAT. ANN. § 14:98(D)(2)(a), and involved punishment *802 not authorized by LA.CODE CRIM. PROC. ANN. art. 894.2(G), (J), the home incarceration statute. Utilizing the categories recognized in LA.REV.STAT. ANN. § 15:301.1, these errors would potentially fall under the provisions of Paragraph (B), sentencing elements which are inconsistent with statutory provisions.
A close examination of the language of Paragraph (B) shows that its provisions are activated by the sentencing court or the district attorney. If the district attorney is unable to have the sentencing court amend a sentence that is inconsistent with statutory provisions in the trial court, Paragraph (B) further allows an appellate court to amend such a sentence if the district attorney has invoked appellate review or applied for supervisory relief. In the case sub judice, the sentencing amendment was not sought by either the sentencing court or the district attorney.
The plain language of Paragraph (D) subjects sentencing amendments "authorized by the provisions of this Section" to the 180 day time limitation. As pointed out, no amendment of the defendant's sentence was accomplished through any provision of LA.REV.STAT. ANN. § 15:301.1: sentencing errors akin to those delineated under Paragraph A are not subject to amendment; and those errors recognized in Paragraph B were not raised either by the sentencing court or the district attorney, the method authorized in LA.REV.STAT. ANN. § 15:301.1(B). Accordingly, whatever time limitation provided in Paragraph D was inapplicable to the appellate court under the particular procedural facts present.[12]
Rather, in the present case, the authority of the appellate court to recognize sentencing error arises in part from the self-activating provisions of LA.REV.STAT. ANN. § 15:301.1(A) (i.e., the failure to impose sentence without benefit of parole, probation, or suspension of sentence) and under the general provisions of LA.CODE CRIM. PROC. ANN. art. 882 (the sentencing errors other than those which fall under LA.REV. STAT. ANN. § 15:301.1(A)). Under the provisions of article 882, "[a]n illegal sentence may be corrected at any time by ... an appellate court on review." (emphasis added). Accordingly, the appellate court on its own properly noticed the numerous sentencing errors in the punishment that the sentencing court imposed without the need to concern itself with the time limitations of Paragraph D.

DECREE
For the foregoing reasons, the judgment of the appellate court is affirmed and this case is remanded to the district court for re-sentencing. Those appellate court decisions inconsistent with the views expressed in this opinion are overruled.
AFFIRMED AND REMANDED TO DISTRICT COURT.
ROBERT L. LOBRANO, J. Pro Tem., concurs and assigns reasons.
CALOGERO, C.J., dissents and assigns reasons.
ROBERT L. LOBRANO, Justice Pro Tempore, concurring.
In 1984, the legislature amended Code of Criminal Procedure Article 882 to provide that a reviewing court could correct an illegal sentence. This court negated the effect of that amendment in State v. Fraser, 484 So.2d 122 (La.1986) by holding that an appellate court could not correct *803 an illegal sentence, sua sponte. In 1999, the legislature enacted La. R.S. 15:301.1 for the intended purpose of overruling State v. Jackson, 452 So.2d 682 (La.1984), and its progeny, which includes Fraser. However, that statute is ambiguous, redundant and conflicts with other statutes, including Article 882. The majority correctly notes that the present case does not fall within the purview of La. R.S. 15:301.1 and that the court of appeal's authority to do what it did emanates from Article 882.[1] The majority also correctly finds that the sua sponte correction of an illegal sentence by an appellate court violates no constitutional provisions simply because no one has a constitutional right to an illegal sentence. Therefore I see no reason to rely on La. R.S. 15:301.1 to support the appellate court's decision. I am of the opinion that Fraser was incorrectly decided and that La.C.Cr. Pro. arts. 882 and 920 give a reviewing court the authority to, sua sponte, correct an illegal sentence. For that reason, I agree with the majority result.
Since the majority recognizes that this case does not fall within the purview of La. R.S. 15:301.1, and that the court of appeal's authority emanates from La.C.Cr.P. art. 882,[2] I am not sure why the retroactivity of La. R.S. 15:301.1 or its application is discussed. Because I believe that La. C.Cr.P. arts. 882 and 920 permit an appellate court to correct illegal sentences, sua sponte, and that State v. Fraser, 484 So.2d 122 (La.1986) was wrongfully decided, I concur with the majority's result in this case. Candidly, I find the wording of La. Rev.Stat. 15:301.1 unclear and ambiguous. If the intent of the statute was to overrule State v. Jackson, 452 So.2d 682 (La.1984), its language makes such an interpretation difficult. However, because the majority adequately addressed the constitutional concerns of correcting illegal sentences by a reviewing court, sua sponte, I would overrule Fraser.
CALOGERO, Chief Justice, dissenting.
I respectfully dissent. The legislature may not authorize an appellate court to modify a defendant's sentence to his detriment under the auspices of either La.Rev. Stat. 15:301.1 or La.Code Crim. Proc. art. 882 when the defendant alone takes the appeal and the state neither lodges an objection at the time of sentencing in the district court nor thereafter seeks appellate review to correct the error. Contrary to the majority's reasoning, such an action creates a chilling effect on a defendant's exercise of his constitutional right to appeal in Louisiana and, in my view, offends La. Const. art. I, § 19, which guarantees Louisiana citizens a right to judicial review.
The majority's reliance on federal cases pre-dating our decision in State v. Jackson, 452 So.2d 682 (La.1984), is misguided, because there is no federal constitutional right to appeal corresponding to our state constitutional right to judicial review. Thus, even though a defendant may not be entitled to an illegally lenient sentence should one be imposed, we recognized in Jackson that allowing the appellate court sua sponte to correct sentencing errors favorable to the defendant when only the defendant has sought review "either is or appears to be retaliatory in nature" and, therefore, "may have a `chilling effect' on the exercise of the [defendant's] right to appeal." Id. at 683. Subsequently, in State v. Fraser, 484 So.2d 122 (La.1986), we reiterated our support for the constitutional underpinnings of Jackson when we *804 rebuffed the perceived attempt, via the amendment of La.Code Crim. Proc. art. 882, to allow an appellate court to correct an illegally lenient sentence on review absent any contemporaneous objection by the state in the district court or any request for appellate review by the state. We were rightly concerned with the appearance of an impartial judiciary and believed that requiring the prosecutor to honor his duty to protect the state's interest furthered that objective. See Fraser, 484 So.2d at 125.
Today, however, the majority capitulates in another legislative attack on Jackson, and, consequently, a collateral assault on Louisiana's constitutional right to judicial review, via a tortured reading of La.Rev. Stat. 15:301.1 in an attempt to breathe new life into La.Code Crim. Proc. art. 882. This court, as the majority also recognizes ante at p. 800, has held that "criminal statutes are to be strictly construed and, in the absence of an express legislative intent, any doubt or ambiguity should be resolved in favor of lenity and not so as to multiply the penalty imposed." State v. Freeman, 411 So.2d 1068, 1072 (La.1982). Notwithstanding that general rule of statutory construction, the majority resolves all of the "unwitting [ ]" ambiguities, redundancies, and conflicts with other statutes that it recognizes in La.Rev.Stat. 15:301.1 against the defendant and in favor of the state, which has not, to this day, bestirred itself even to object to the sentence imposed, much less initiate correction thereof. See Ante, p. 800. Thus, despite finding that the instant case does not fall within the purview of La.Rev.Stat. 15:301.1, ante, p. 797 n. 6 and p. 801 n. 11, the majority interprets ambiguities and conflicts therein to expand the reach of La.Code Crim. Proc. art. 882 to allow an appellate court on review sought solely by the defendant to order remand and correction of an illegal sentence, when the state has neither objected to the error in the district court nor sought appellate review to correct the error. To add insult to injury, the majority leaves for another day the constitutional propriety of exempting the state, but not the defendant, from the statutory prerequisites for preserving for appellate review a claim relating to punishment, i.e., a contemporaneous objection, La.Code Crim. Proc. art. 841, or a motion to reconsider sentence, La.Code Crim. Proc. art. 881.1. Ante, p. 799 n. 7.
In sum, I believe the court of appeal lacked the authority to vacate the defendant's sentence and remand the case to the district court when the state did not object, appeal, or seek writs in this court. Such an action, in my view, was unconstitutional; therefore, the sentence cannot be modified in that fashion.
The majority further errs in its analysis of La.Rev.Stat. 15:301.1. Even if La.Rev. Stat. 15:301.1 changed the result in Jackson and Fraser, I would subject the authority of an appellate court to order correction of illegally lenient sentences under Subsection (B) to the same 180-day time limit of Subsection (D) that the legislature has imposed on a district court for correcting sentencing errors under Subsection (B) favorable to the defendant either on its own initiative or at the request of the state. The majority's decision today effectively reads Subsection (D) out of the statute in those cases in which the defendant has taken an appeal and over six months have elapsed before the appellate court issues its opinion. The point is illustrated by this case. Although 180 days had already elapsed when the Third Circuit rendered its decision, and the district court could not have corrected its own errors on its own initiative, the majority, as did the court of appeal, sweeps aside the provisions of Subsection (D) and permits the district court to act solely because the defendant *805 took an appeal. The district court could have corrected sua sponte its sentencing errors under Subsection (B) at any time within 180 days of imposing sentence, and was not precluded from doing so by the pending appeal. See La.Code Crim. Proc. art. 916(3) (despite entering order of appeal, district court retains jurisdiction to correct an illegal sentence or take other appropriate action pursuant to a properly made or filed motion to reconsider sentence). Yet the district court failed to exercise its authority within the 180-day time limit of Subsection (D); consequently, I would hold that, once the 180-day time period has elapsed, the appellate court lacks the authority to revive the lower court's power to correct its own sentencing errors under Subsection (B).
Additionally, I disagree with the majority's finding that a district court can amend a sentence to make it comply with the self-enacting provision of La.Rev.Stat. 15:301.1(A). Because Subsection (A) is self-enacting, it would apply by operation of law. If a statute provides that an entire sentence must be without benefit of probation, parole, or suspension of sentence, and the sentencing court fails to comply with that provision, Subsection (A) provides that the entire sentence is nonetheless deemed to be without benefit of probation, parole or suspension of sentence. The sentencing court does not become involved, because the statute is self-enacting. Similarly, when the penalty provision states that only a portion of a sentence is to be without benefit of probation, parole, or suspension of sentence, and the sentencing court has discretion as to what portion is to be served without benefit of probation, parole, or suspension of sentence, if the court fails to impose a proper sentence, Subsection (A) operates to correct the error automatically. Because the statute is self-enacting, the sentencing court no longer has discretion, and the portion of the sentence that is without benefit of probation, parole, or suspension of sentence should be the minimum allowed under the statute.
Here, the sentencing court's error, i.e., its failure to indicate what portion of the defendant's sentence was to be served without benefit of probation, parole, or suspension of sentence, would have been automatically corrected by the self-enacting provision of La.Rev.Stat. 15:301.1(A). La.Rev.Stat. 14:98(D) provides that, upon a third DWI conviction, at least six months of the sentence will be without benefit of probation, parole, or suspension of sentence. Because the sentencing court failed to indicate what portion of the sentence would be without benefit of probation, parole or suspension sentence, the self-enacting provision of La.Rev.Stat. 15:301.1(A) should deem the portion to be served "without benefit or probation, parole, or suspension of sentence" to be the minimum six months specified in La.Rev. Stat. 14:98(D).
As to the trial court's failure to impose fines and its selection of unauthorized home incarceration in the sentence, these errors fall under La.Rev.Stat. 15:301.1(B), which is not self-enacting. These errors can be corrected only by the district court on its own motion or by the state either in the district court or on appeal. The correction, however, is subject to the 180-day time limit, which has long since passed in this case. Hence, correction of these errors is time barred.
For the foregoing reasons, I respectfully dissent.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] In the present case, LA.REV.STAT. ANN. § 14:98(D) requires that on a third DWI conviction

"the offender shall be imprisoned with or without hard labor for not less than one year nor more than five years, and shall be fined two thousand dollars. At least six months of the sentence of imprisonment imposed shall be without benefit of probation, parole, or suspension of sentence. If a portion of the sentence is imposed with benefit of probation, parole, or suspension of sentence, the court shall require the offender to participate in a court-approved substance abuse program and participate in a court-approved driver improvement program." In addition, LA.REV.STAT. ANN. § 14:98(D)(2)(a) requires that "the court shall order that the vehicle being driven by the offender at the time of the offense shall be seized and impounded, and sold at auction...."
[2] LA.CODE CRIM. PROC. ANN. art. 894.2(G), (J) further provides that home incarceration could not exceed two years for felonies and was unavailable for any second or later DWI conviction unless the offender first served a minimum of 48 consecutive hours in jail.
[3] We again take the opportunity to note that a writ denial by the supreme court has no precedential value and does not indicate the supreme court's adoption of the appellate court's reasoning. St. Tammany Manor v. Spartan Bldg. Corp., 509 So.2d 424 (La.1987).
[4] Third Circuit: State v. King, 99-860 (La. App. 3 Cir. 2/2/00), 757 So.2d 731 (holding that no illegally lenient sentences can be recognized or deemed amended because the State did not complain and LA.REV.STAT. ANN. § 15:301.1 was not in effect at the time of sentencing), writ denied, 00-0704 (La.12/15/00), 777 So.2d 476; State v. Price, 00-00987 (La.App. 3 Cir. 1/31/01), 780 So.2d 489 (holding that even though the sentence was illegally lenient and sentencing took Place after the effective date of LA.REV.STAT. ANN. § 15:301.1, the 180-day period ran and the State had not complained of sentence). Fifth Circuit: State v. McGinnis, 00-219 (La. App. 5 Cir. 8/29/00), 768 So.2d 216 (holding that State v. Fraser, supra, prevented the correction of an illegally lenient multiple offender sentence for armed robbery because the State failed to complain or preserve the issue for appellate review); State v. Barroso, 99-1297 (La.App. 5 Cir. 5/17/00), 762 So.2d 206 (declining to amend an illegally lenient sentence because the 180-day period had elapsed and the State failed to object or file a motion for reconsideration); State v. George, 99-887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973 (holding that the retroactive application of LA.REV. STAT. ANN. § 15:301.1 would violate the prohibition against ex post facto laws because it would expose the defendant to harsher punishment); State v. Boles, 99-662 (La.App. 5 Cir. 11/10/99), 750 So.2d 1059 (holding that under State v. Fraser, supra, an appellate court could not correct an illegally sentence because the State failed to appeal the issue); State v. Pugh, 99-851 (La.App. 5 Cir. 12/21/99), 750 So.2d 313 (holding that it could not correct an illegally lenient sentence because the law in effect at sentencing precluded appellate review when the State did not object and preserve the issue for appellate review).
[5] Although the Legislature used the word "overrule," the correct terminology should have been the Legislature "changed the law" as the Legislature does not act as a court and has no authority to "overrule" a case.
[6] State ex rel. Pierre v. Maggio, 445 So.2d 425 (La.1984) has little application, if any, to the present case. The Pierre decision prohibited the Department of Public Safety and Corrections ("DOC") from interpreting terms and conditions of imprisonment. Thus, when a trial court omitted parole restrictions in the pronouncement of sentence for a crime the penalty of which carried parole restrictions, under Pierre, the DOC records had to track the sentence actually imposed, for the "custodian's obligation is to see that the sentence imposed is the sentence served." Id. at 425. Under LA.REV.STAT. ANN. § 15:301.1, DOC may safely determine an inmate's parole eligibility by reference to the statute under which sentence was imposed.
[7] It also appears that the first sentence is only applicable to the correction of sentences in the sentencing court. Although the second sentence grants the State standing to seek appellate or supervisory relief for the amendment of sentence and would allow the appellate court to reach the issue if so raised, this proviso does not seem applicable to the present case in which the reviewing court recognized the issue sua sponte on a errors patent review. In the present case, it appears that the appellate court's authority to reach the issue emanates from LA.CODE CRIM. PROC. ANN. art. 882 which states that an "illegal sentence may be corrected at any time by the sentencing court or an appellate court." (emphasis added). See infra p. 802 for further discussion.
[8] We note that LA.REV.STAT. ANN. § 15:301.1(B) seemingly exempts the State (but not the defendant) from the contemporaneous objection rule as required in LA.CODE CRIM. PROC. ANN. art. 841 or as modified by the motion to reconsider sentence recognized in LA.CODE CRIM. PROC. ANN. art. 881.1 as a prerequisite for preserving a claim relating to punishment for appellate review. In the present case, the State did not initiate this sentencing review. Accordingly, we save for another day any constitutional issue that the unilateral availability of LA.REV.STAT. ANN. § 15:301.1(B) to the State may implicate.
[9] See supra n. 5 for jurisprudence from the Third and Fifth Circuit Courts of Appeal which strictly applies the 180 day time limit pronounced in LA.REV.STAT. ANN. § 15:301.1(D).
[10] "DEEM. To hold; consider; adjudge; believe; condemn; determine; treat as if; construe." BLACK'S LAW DICTIONARY 415 (6th ed.1990).
[11] This Court had earlier stated than an illegal sentence is "no sentence at all," State v. Rome, 96-0991 (La.7/1/97), 696 So.2d 976, 981, quoting State v.Johnson, 220 La. 64, 55 So.2d 782, 784 (1951). Accordingly, we routinely required a remand for re-sentencing with full procedural safeguards including the presence of the defendant, and each side able to introduce evidence in order to ascertain the intent of the original sentencing judge. See State v. Husband, 593 So.2d 1257 (La. 1992); State v. Desdunes, 579 So.2d 452 (La. 1991). However, in Stale v. Harris, 93-1098 (La.1/5/96), 665 So.2d 1164, we streamlined the process, eliminating the need for a hearing and the defendant's presence, and allowed the district court to make "ministerial" corrections to the record, with notice to the parties. LA.REV.STAT. ANN. § 15:301.1 goes farther; it eliminates the need for the ministerial remand and provides no notice requirement.
[12] Because this case does not fall within the purview of LA.REV.STAT. ANN. § 15:301.1, we are not called upon to reconcile any conflict which may exist between Paragraph D of LA. REV.STAT. ANN. § 15:301.1 and LA.CODE CRIM. PROC. ANN. art. 882.
[1] See footnotes 6 and 11 of the opinion.
[2] See footnotes 6 and 11 of the opinion.